UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IDEXX DISTRIBUTION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:21-cv-00223-JDL |
| | ) |
| NORTHWEST ANIMAL | ) |
| HOSPITAL, P.A., | ) |
| | ) |
| Defendant. | ) |

## JUDGMENT

On November 1, 2021, Plaintiff IDEXX Distribution, Inc. ("IDEXX") filed a combined Motion for Entry of Default and Default Judgment (ECF No. 6) due to the failure of Defendant Northwest Animal Hospital, P.A. ("Northwest") to file a timely answer to IDEXX's Complaint or to otherwise defend this action. The Clerk entered default (ECF No. 7), and the Motion for Default Judgment remains pending. For the reasons that follow, I grant the Motion for Default Judgment.

### I. LEGAL STANDARD

"A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." *In re The Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) (quoting *Franco v. Selective Ins.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999)); *see Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985) ("[T]here is no question that, default having been entered, each of [the plaintiff's] allegations of fact must be taken as true."). However, "[l]iability is not deemed established simply because of the default," 10A Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688.1 (4th ed. 2021), and "[t]he Court must, therefore, be persuaded that the facts set forth in the complaint support the entry of judgment on one or more cognizable claims," *IDEXX Distrib., Inc. v. Lauridia*, No. 2:19-cv-00412, 2020 WL 265194, at *1 (D. Me. Jan. 1, 2020).

Once liability is established, "any request for monetary relief through a default judgment must be supported by proof," unless such a request is for a "sum certain" that is "readily ascertainable from the complaint." *Id.* (first citing Fed. R. Civ. P. 55(b)(2); then citing *KPS & Assocs. Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003); and then citing *In re The Home Rests.*, 285 F.3d at 114).

Accordingly, I first consider the facts alleged in the Complaint and, accepting them as true, determine whether those facts establish liability. Next, I must determine, based on the evidence provided by IDEXX, the proper amount of damages.

## II. FACTUAL BACKGROUND

IDEXX's one-count Complaint for breach of contract alleges that on February 25, 2019, IDEXX and Northwest entered into an agreement for veterinary laboratory products and services (the "Agreement"). The Agreement required Northwest to use IDEXX for at least 90% of its annual reference laboratory services and to purchase at least $35,967 annually ($2,997.25 monthly) of qualifying diagnostic products and services from April 1, 2019 through March 31, 2025. In exchange, Northwest received a substantial price discount and IDEXX provided Northwest with certain items of diagnostic equipment. However, on or around December 2019, Northwest stopped using IDEXX's reference laboratory services, and Northwest has otherwise failed to

purchase qualifying diagnostic products and services at the minimum purchase amount. IDEXX has, in turn, suffered a loss of profits.

## III. DISCUSSION

### A. Liability

Under Maine law, which applies to the Agreement by its own terms, "in order to obtain relief for a breach of . . . contract, the plaintiff must . . . demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088, 1091-92. The facts alleged by IDEXX in its Complaint establish both the material terms of the contract and that the Agreement was breached. Accordingly, Northwest is liable for breach of contract.

### B. Damages

Because IDEXX has established Northwest's liability, I must decide the question of damages. "Once liability is found, the factfinder is *required* to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." *Libertad v. Sanchez*, 215 F.3d 206, 208 (1st Cir. 2000) (alterations omitted) (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)).

In support of its Motion for Default Judgment, IDEXX submitted the declaration of Jamison Pelletier, who is the Senior Director of Finance at IDEXX Laboratories, Inc., of which IDEXX is an affiliate. Pelletier asserts that Northwest's breach of the Agreement has resulted in lost profits in the amount of $122,461. Pelletier explains that Northwest was $12,889 short of its annual purchase requirement in the first year of its contract with IDEXX. Together with the shortfall

of $162,055 for years two through six of the Agreement, the total shortfall is $174,944. Pelletier then multiplies the total shortfall amount by IDEXX's profit margin of 70%—effectively subtracting the cost that IDEXX would have paid to provide the products and services—for a resulting total loss of $122,461.

The theory of recovery presented by Pelletier is that of a lost-volume seller. Black's Law Dictionary defines a lost-volume seller as:

> A seller of goods who, after a buyer has breached a sales contract, resells the goods to a different buyer who would have bought identical goods from the seller's inventory even if the original buyer had not breached. Such a seller is entitled to lost profits, rather than contract price less market price, as damages from the original buyer's breach.

*Lost-Volume Seller*, Black's Law Dictionary (11th ed. 2019).

The lost-volume seller theory is supported by the Restatement (Second) of Contracts, which explains that:

> If the injured party could and would have entered into [a] subsequent contract [with another customer], even if the [initial] contract had not been broken, and could have had the benefit of both, he can be said to have "lost volume" and the subsequent transaction is not a substitute for the broken contract.

Restatement (Second) of Contracts § 347 cmt. f (Am. L. Inst. 1981). In a lost-volume seller case, the injured party's damages are "based on the net profit that [it] has lost as a result of the broken contract." *Id.*

Although many jurisdictions have adopted the lost-volume seller theory, some have rejected it. *See KLLM Transp. Servs., LLC v. JBS Carriers, Inc.*, No. 3:12-CV-116, 2015 WL 11005024, at *11 (S.D. Miss. Aug. 17, 2015) (discussing different tests applied by jurisdictions that have adopted the lost-volume seller theory); *Rezro, Inc. v. Maximo Lanfranco*, No. 107-EDA-2015, 2016 WL 597205, at *2 (Pa. Super. Ct. Feb.

12, 2016) (noting that Pennsylvania does not accept the lost-volume seller rule). The Maine Law Court has recognized, but has not adopted or rejected, the lost-volume seller doctrine. *See Schiavi Mobile Homes, Inc. v. Gironda*, 463 A.2d 722, 726 (Me. 1983) ("We leave for another day the question of the validity of lost-volume recovery.") However, in a similar case in this District—which involved IDEXX as a plaintiff seeking a default judgment when a customer breached a similar contract—Judge Walker concluded that the Law Court would likely adopt the lost-volume seller theory, "given its recognition in the Restatement and persuasive precedent existing in multiple jurisdictions." *IDEXX*, 2020 WL 265194, at *2. I agreed with and adopted this view in *IDEXX Distrib., Inc. v. Pet Care Veterinary Ctr., Inc.*, 2:20-cv-00252 (D. Me. Aug. 2, 2021), and do the same now.

I therefore turn to whether the alleged facts demonstrate a scenario in which a lost-volume recovery is appropriate. Although different jurisdictions describe the test for whether a seller qualifies as a lost-volume seller somewhat differently, they all track similar factors: first, that the seller had the capacity to perform multiple sales; second, that it would have been profitable for the seller to perform multiple sales; and third, that the seller would have made an additional sale even if the first sale had not been repudiated. *KLLM Transp. Servs.,* 2015 WL 11005024, at *11.

IDEXX satisfies this test. The Complaint alleges that IDEXX is "a leader in diagnostics and information technology solutions for animal health," ECF No. 1 ¶ 1, and it is clear from the Pelletier declaration that IDEXX provides veterinary diagnostic and laboratory products and services throughout the United States. Pelletier also notes that fixed costs—such as the costs to establish laboratory testing

facilities and employee supervisors—"do not vary as individual customer product and service volumes change." ECF No. 6-2 ¶ 13. This demonstrates that IDEXX has the capacity to perform multiple profitable sales, and that IDEXX would have made other sales regardless of Northwest's repudiation.

A formal evidentiary hearing is not needed to conduct an accounting, to determine the amount of damages, to establish the truth of any allegation by evidence, or to investigate any other matter. Fed. R. Civ. P. 55(b)(2). Accordingly, no "further inquiry" is required to establish the quantum of damages. *KPS,* 318 F.3d at 18. Northwest has been properly defaulted, and IDEXX has established Northwest's liability and the proper amount of damages.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Default Judgment (ECF No. 6) is **GRANTED,** and IDEXX is **AWARDED** damages in the amount of $122,461 plus post-judgment interest pursuant to 28 U.S.C. § 1961.

**SO ORDERED.**

**Dated:  December 10, 2021**

                                                     /s/ JON D. LEVY
                                            **CHIEF U.S. DISTRICT JUDGE**